# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LXR RS V, LLC,**<br><br>*Plaintiff*<br><br>v.<br><br>**MUNICIPALITY OF NORRISTOWN,**<br><br>*Defendant* | Case No. 2:19-cv-01397-JDW |

## MEMORANDUM

Pennsylvania law permits municipalities to require property owners to obtain a Use and Occupancy ("U&O") Certificate before selling real property. *See* 68 P.S. § 1082.1. The Municipality of Norristown imposes such a requirement. Plaintiff LXR RS V, LLC ("LXR") claims in this case that Norristown's requirements, at least as applied to it, imposed a temporary taking, violated its rights to substantive and procedural due process, and violated the Civil Rights Act. LXR also asserts claims for a writ of mandamus and a declaratory judgment under Pennsylvania law. Norristown has moved to dismiss all claims. (ECF No. 18.) As explained below, the Court concludes that LXR has not stated a claim for any of its federal causes of action. The Court also declines to exercise supplemental jurisdiction over LXR's state-law claims. The Court will therefore remand this case to the Court of Common Pleas for Montgomery County.

I.  **FACTUAL BACKGROUND**

   A.  **Norristown's Ordinances Regarding Sales Of Property**

Under Pennsylvania law, a municipality that requires U&O Certificates must proceed as follows: (1) if the municipal inspection of the property reveals no violations, then the municipality

must issue a U&O Certificate; (2) if the inspection reveals one violation but no substantial violation, the municipality must issue a temporary U&O Certificate; and (3) if the inspection reveals at least one substantial violation, the municipality must specifically note the items on an inspection report and issue a temporary access certificate. *See* 68 P.S. § 1082.1. In the event that an inspection reveals a substantial violation, a purchaser has one year to rectify the violation or to demolish the building. 68 P.S. § 1083.

Norristown requires U&O Certificates in connection with the sale of property. In particular, Norristown Code § 128-3.3 prohibits the sale of property without a U&O Certificate. The Norristown Code provides for property inspections and the issuance of certificates in compliance with Pennsylvania law. *See* Norristown Code § 128-6, 128-7.

**B.     LXR's Acquisition Of The Properties**

On October 12, 2018, LXR executed a series of Standard Agreements for the Sale of Real Estate (the "Agreements") to acquire the properties at 5 E. Elm Street, 15 E. Elm Street, and 17 E. Elm Street (the "Properties"). The Agreements included a closing date of November 13, 2018. In addition, the Agreements made LXR, as buyer, responsible to order a U&O Certificate and to make any repairs necessary to obtain a U&O Certificate.

On October 25, 2018, LXR applied for zoning permits for the Properties. Because Norristown was still processing the zoning permit applications as of the date of the scheduled closing, LXR agreed with the property owners to delay the closing from November 13, 2018, until January 11, 2019. Norristown issued zoning permits on November 20, 2018, and November 28, 2018. The zoning permits identified the need for a U&O inspection to take place as an "Additional Step[] To Be Taken By Applicant."

2

LXR applied for U&O Certificates on November 28, 2018. Norristown conducted an inspection of the Properties approximately one month later, on December 27, 2018. That same day, Norristown issued a Warning Notice to one of the owners of the Properties, noting violations that the inspection revealed. However, Norristown did not issue a temporary access certificate or a U&O Certificate. Instead, it apparently insisted that the property owners correct the violations so that Norristown could avoid declaring the properties uninhabitable and turning out the residents. (ECF No. 9, Ex. H.)

LXR and the owners of the Properties extended the closing deadline at least two more times, once to February 8, 2019, and a second time to March 25, 2019. On March 6, 2019, Norristown issued temporary U&O Certificates for the Properties.

C. **Procedural History**

LXR filed this action in the Court of Common Pleas for Montgomery County. In its original Complaint, LXR sought a writ of mandamus and a declaratory judgment under Pennsylvania law. Norristown removed the case to this Court and moved to dismiss the case. LXR then filed an Amended Complaint, in which it seeks a writ of mandamus and a declaratory judgment and in which it asserts claims for a temporary taking, violation of substantive due process, violation of procedural due process, and violation of the Civil Rights Act. Norristown again moved to dismiss under Rules 12(b)(1) and 12(b)(6). (ECF No. 18.)

Among other things, Norristown argues in its Motion that the Court cannot hear LXR's takings claim because LXR did not pursue remedies in state court. Since the Parties filed their briefs, the Supreme Court has ruled that a property owner "has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time." *Knick v. Twp. of Scott,*

*Pennsylvania*, 139 S. Ct. 2162, 2168 (2019). In July, the Court conducted a status conference with the Parties, during which Norristown acknowledged that the *Knick* decision renders its argument about Pennsylvania state court remedies moot. The Court therefore will not address that argument.

## II. LEGAL STANDARD

Dismissal for failure to state a claim pursuant to F.R.C.P. 12(b)(6) is proper if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp*, at 555; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). The Court must disregard legal conclusions, conclusory statements, and rote recitals of the elements of a cause of action. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

### A. Takings Claim

In the Third Circuit, courts evaluating takings challenges ask three questions: (1) whether a taking occurred; (2) whether that taking was for public use; and (3) whether the claimant received just compensation. *See In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 525 (3d Cir. 2017). Takings may occur either by physical appropriation of property or by regulatory activity. *See id.* Here, the Parties' dispute arises out of a regulatory action (or lack of action) and centers on the first element—whether a taking occurred. The Court concludes there was no taking, and therefore the takings claim is not viable.

As a threshold matter, a plaintiff in a takings claim must show that the government's action affected a legally cognizable property interest. *See Prometheus Radio Project v. FCC*, 373 F.3d 372, 428 (3d Cir. 2004), *as amended* (June 3, 2016). Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the deprivation or reduction of that interest constitutes a taking. *Givens v. Alabama Dept of Corr.*, 381 F.3d 1064 (11th Cir. 2004). The Constitution does not create property interests. Instead, they arise under some independent source of law, including state law. *See Checker Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908, 917 (11th Cir. 2018) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984)).

Under Pennsylvania law, once a party executes a contract for the sale of real estate, the purchaser holds equitable title and is thus the equitable owner of the real estate. *See, e.g.*, *Carter Lumber Co., Inc. v. Bales*, No. 180 MDA 2019, 2019 WL 3778436, at *2 (Pa. Super. Ct. Aug. 12, 2019); *Floyd v. Com., Dept. of Public Welfare*, 407 A.2d 1388, 1390 (Pa. Cmwlth. 1979) ("[a] purchaser under a contract of sale … obtains a legally cognizable interest in property") (quoting *Payne v. Clark*, 187 A.2d 769, 770 (Pa. 1963)). Purchasers, as "holders of an equitable interest in land[,]" are "entitled to participate in a condemnation award." *Redevelopment Auth. of City of Philadelphia v. New Eastwick Corp.*, No. 2087 APRIL TERM 2003, 2005 WL 705976, at *5 (Pa. Com. Pl. Mar. 23, 2005), *aff'd sub nom. Redevelopment Auth. v. New Eastwick Corp.*, 894 A.2d 830 (Pa. Super. Ct. 2005) (internal quotations omitted). The Court therefore concludes that Pennsylvania law vests a legally cognizable interest in parties that have executed a valid contract for the purchase of real property.

That is not the end of the analysis, however. The Takings Clause of the Fifth Amendment "requires the payment of compensation whenever the government acquires private property for a public purpose." *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,

5

535 U.S. 302, 321 (2002). "[T]emporary takings which ... deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318 (1987). Moreover, courts recognize a regulation as a taking if the regulation precludes all economically beneficial and productive use of land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). There is no precise formula for determining whether governmental regulation has deprived a landowner of economically viable use of his property. Instead, the court must make "ad hoc, factual inquiries into the circumstances of each particular case." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224 (1986).

LXR claims that Norristown deprived it of "all economically beneficial and productive uses of the … Properties during the time period of Norristown's unlawful refusal to issue a use and occupancy certificate…." (ECF No. 9, ¶ 72.) The Supreme Court, however, has ruled that decreases in the value of property during governmental deliberations, absent an extraordinary delay, are mere incidents of ownership and do not constitute a regulatory taking. *See Agins v. City of Tiburon*, 447 U.S. 255, 263 n.9 (1980). Indeed, the requirement that "a person obtain a permit before engaging in a certain use of his or her property does not itself 'take' the property in any sense: after all, the very existence of a permit system implies that permission may be granted." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 126–27 (1985).

The passage of time alone does not determine whether a delay is "extraordinary." *See Bass Enterprises Prod. Co. v. United States*, 381 F.3d 1360, 1366 (Fed. Cir. 2004). The length of any alleged extraordinary delay must be put into context and examined in relation to the regulatory permitting scheme, the nature of the permitting process, and reasons for the delay. *Aloisi v. United States*, 85 Fed. Cl. 84, 93 (2008). If the delay is indeed extraordinary, the temporary regulatory

6

taking analysis turns to the three factors outlined in the Supreme Court's holding in *Penn Central Transp. Co. v. New York City*: (1) the regulation's economic effect on the landowner, (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action (the "Penn Central" factors). 438 U.S. 104, 124 (1978).

Here, LXR has identified a delay totaling approximately 69 days, from the time it received the inspection report on December 27, 2018, until it received a temporary access certificate on March 6, 2019. However, LXR has not pled any facts to establish that the delay was extraordinary. LXR appears to rest on the idea that Norristown should have issued a temporary access certificate sooner. But that is the very nature of a "delay:" something was done later than it should have been done. LXR needs to do more than identify a delay; it must allege facts that make it plausible that the delay was extraordinary. It has not done so.

Notably, several courts have held that much longer delays are not extraordinary. *See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (no temporary taking despite eight year delay); *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 (2002) (thirty-two month delay not extraordinary); *Wyatt v. United States*, 271 F.3d 1090 (Fed.Cir.2001) (same for seven year delay); *Dufau v. United States*, 22 Cl.Ct. 156, 163 (Cl.Ct.1990) (permit delay of sixteen months did not constitute temporary taking); *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351 (Fed. Cir. 2004) (eighteen-month delay was "far short of extraordinary"). These holdings demonstrate that LXR cannot prevail merely by pointing to a 69-day delay. It would have to show much more.

LXR alleges economic harm as a result of the delay, but absent a delay that is "extraordinary," the Court does not proceed to an evaluation of the *Penn Central* factors, including a regulation's economic effect on the landowner. *See, e.g., Boise Cascade Corp. v. United States*,

7

296 F.3d 1339, 1352 (Fed.Cir.2002); *Riviera Drilling & Expl. Co. v. United States*, 61 Fed. Cl. 395, 405 (2004). As such, LXR has failed to state a takings claim.

**B.     Due Process**

LXR asserts claims for violations of both substantive due process and procedural due process. However, it has not properly pled either claim.

**1.     Substantive due process**

To prevail on a substantive due process claim, LXR must show that it has a property interest "protected by the substantive due process clause[,] and the government's deprivation of that protected interest shocks the conscience." *Joey's Auto Repair & Body Shop v. Fayette Cty.*, No. 18-3087, 2019 WL 4082950, at *2–3 (3d Cir. Aug. 29, 2019) (*citing Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). Norristown concedes that LXR has a fundamental property interest worthy of substantive due process under existing law. (ECF No. 18 at 13.) Therefore, the only question is whether Norristown's conduct shocks the conscience.

Only the "most egregious official conduct" shocks the conscience. *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (internal quotations omitted); *see also Atkins v. Borough of Phoenixville*, 336 F. Supp. 3d 511, 520 (E.D. Pa. 2018); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). While the standard "varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision." *Chainey*, 523 F.3d at 220 (3d Cir. 2008).

Under Third Circuit law, "[l]and-use decisions are matters of local concern, and such disputes should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402. Thus, the government's conduct in a zoning dispute generally does not shock the conscience absent

8

allegations of corruption, self-dealing, bias against an ethnic group, or additional facts that suggest conscience-shocking behavior. *Eichenlaub v. Twp. of Indiana,* 385 F.3d 274 (3d Cir. 2004). The unfair application of zoning requirements, the pursuit of unnecessary enforcement actions, and delay of permits and approvals, without more, fail to satisfy the "shocks the conscience" standard. *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 144–45 (3d Cir. 2014); *see also Highway Materials, Inc. v. Whitemarsh Township*, 2004 WL 2220974 (E.D.Pa. Oct.4, 2004) (claims of intentional delay and other tactics did not satisfy "shock the conscience" standard because there were no allegations of corruption or self-dealing). "[E]ven allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim." *Blain v. Twp. of Radnor*, 2004 WL 1151727, at *15 (E.D.Pa. May 21, 2004).

The Amended Complaint does not allege any conduct that "shocks the conscience." It asserts that Norristown acted in bad faith. (ECF No. 9, ¶ 78.) But it does not make any allegations that would establish the type of conduct that the Third Circuit says shocks the conscience.

LXR argues in its opposition that Norristown's ordinance violates the Fourth Amendment's prohibition on unreasonable searches and seizures because it requires a land owner to permit municipal authorities onto the premises for an inspection before the sale can proceed. The Court need not address that issue, however, because LXR has not pled a violation of any Fourth Amendment rights in its Amended Complaint.

### 2. Procedural due process

LXR claims that it had no ability to remedy Norristown's alleged delay in issuing either a U&O Certificate or a temporary access permit. To state a procedural due process claim, LXR must show that Norristown deprived it of a protected property interest and that the state procedure for challenging the deprivation was constitutionally inadequate. *Hill v. Borough of Kutztown*, 455

9

F.3d 225, 233–34 (3d Cir.2006); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 138 (3d Cir.2010). In other words, due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Riveros-Sanchez v. City of Easton*, No. 19-CV-545, 2019 WL 3334663, at *4 (E.D. Pa. July 25, 2019) (*quoting Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)). Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 690 (E.D. Pa. 2017), *aff'd*, 726 F. App'x 118 (3d Cir. 2018) (internal citations omitted).

In general, "delay alone does not create a procedural due process violation." *Midnight Sessions*, 945 F.2d at 682 (citation omitted). Indeed, it is not surprising that a statutory permitting scheme causes some delay from evaluation to the issuance of a permit, and not every such delay requires a procedural mechanism to rectify it. Of course, if LXR thinks that the delay has become unreasonable, it had a vehicle to challenge inaction on the part of municipal authorities: a petition for a writ of mandamus. *See, e.g.*, *All State Signz Co. v. Burgettstown Borough*, 154 A.3d 416, 420 (Pa. Commw. 2017) (mandamus "will issue to compel performance of a ministerial duty where the petitioner establishes a clear legal right to relief, a corresponding duty in the defendant, and a lack of any other appropriate or adequate remedy"); *cf. Gibraltar Rock, Inc. v. New Hannover Tp. Zoning Hearing Bd.*, 68 A.3d 1012, 1018 (Pa. Commw. 2013) ("a board's inaction will subject it to a writ of mandamus"). Accordingly, LXR's procedural due process claim also fails.

### C. Civil Rights Act

In its fifth cause of action, LXR brings claims under the Civil Rights Act, specifically 28 U.S.C. §§ 1983, 1985, 1986 and 1988. In order to plead a § 1983 claim, LXR must allege "a deprivation of a federally protected right ... by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997), *as amended* (May 15, 1997). Section 1983 does not confer substantive rights, but instead serves as a vehicle for the vindication of rights established under the

10

United States Constitution or federal law. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). In other words, a § 1983 claim cannot proceed without a deprivation of a federal right. *Joey's Auto Repair & Body Shop*, 2019 WL 4082950 at *3. LXR's § 1983 claim cannot survive a 12(b)(6) motion as the Amended Complaint fails to allege a deprivation of a federally protected right under either Count III or Count IV.

With respect to its § 1985 claim, LXR must allege the existence of a conspiracy. *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). Nowhere in its Amended Complaint does LXR allege that a conspiracy existed at any point. Likewise, respect to its § 1986 and § 1988 claims, LXR makes no allegations as to how Norristown violated these statutes.

### D. Supplemental Jurisdiction

LXR's only remaining claims are state law claims. Where all claims over which this Court has original jurisdiction are dismissed, this Court "<u>must</u> decline" to exercise supplemental jurisdiction over pendent state claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (*quoting Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original)). This Court finds that the instant action implicates no such considerations. Therefore, Counts I and II of the Amended Complaint are also dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Norristown's Second Motion to Dismiss for Failure to State a Claim pursuant to F.R.C.P. 12(b)(6). Because the Court has declined to exercise supplemental jurisdiction over the state law claims, the case will be remanded to the Court of Common Pleas for Montgomery County. An appropriate Order will follow.

BY THE COURT:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: October 7, 2019